UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RANDALL S. REED, )<br>      Plaintiff, )<br>  )<br>v. )<br>  )<br>ANDREW SAUL, Commissioner of )<br>Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 2:20-CV-17-JPK |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Randall S. Reed, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 15]. Plaintiff requests that the September 17, 2018 decision of the Administrative Law Judge denying his claim for disability insurance benefits and supplemental security income be reversed and remanded for an award of benefits or, in the alternative, for a new hearing. The Commissioner filed a response, and Plaintiff filed a reply. For the following reasons, the Court remands this matter for further administrative proceedings.

**PROCEDURAL BACKGROUND**

On December 3, 2012, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability as of June 1, 2008. The applications were denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on December 10, 2014. On February 25, 2015, the ALJ issued an unfavorable decision, finding that Plaintiff had not been under a disability from June 1, 2008, through February 25, 2015. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then filed a civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's

decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). On March 15, 2018, Magistrate Judge John E. Martin of the Northern District of Indiana issued an order reversing the February 25, 2015 decision of the ALJ and remanding for further proceedings. The case was assigned to a new ALJ, who held a hearing on August 30, 2018. On September 17, 2018, the ALJ issued an unfavorable decision, making the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disk disease of the spine, degenerative joint disease of the left shoulder, residuals from ankle fractures, osteoarthritis, depression, and anxiety.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) where the claimant can lift and/or carry 20 pounds occasionally, and 10 pounds frequently, can sit up to six hours of an eight-hour workday, and can stand and/or walk up to six hours of an eight-hour workday. The claimant can occasionally reach overhead with the non-dominant left upper extremity, and frequently reach in all other directions with the non-dominant left upper extremity. He can frequently handle and finger with the dominant right hand. He can occasionally operate foot controls with both feet. He can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch. He can never climb ladders, ropes, or scaffolds, never crawl, and never work in extreme cold. The claimant must avoid work at unprotected heights, around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of his work-related duties. He must occasionally use a medically necessary cane while walking. Every 30 minutes, he must be allowed to shift positions or alternate between sitting or standing for one to two minutes at a time while remaining on task. He is limited to simple, routine tasks and simple work-related decisions.
>
> 6. The claimant is unable to perform any past relevant work.

---

[1] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

    7.      The claimant was born [in 1968] and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

    8.      The claimant has at least a high school education and is able to communicate in English.

    9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2008, through the date of this decision.

(AR 502-12[2]).

The Appeals Council declined to assume jurisdiction, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which is found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

§ 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity

since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether he is unable to perform his past relevant work, and (5) if the claimant is unable to perform past relevant work, whether he is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts three grounds for reversal of the ALJ's decision. He contends that (1) the ALJ erred in rejecting the opinion of a consultative examining physician, (2) the ALJ's assessment of Plaintiff's subjective symptom testimony is not supported by substantial evidence, and (3) the ALJ erred in arriving at the RFC determination.

### A. Opinion of Examining Physician

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Adela Perez, a consultative examining physician. (Pl.'s Br. 14-16, ECF No. 15).

5

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Unless a treating source's medical opinion is given controlling weight,[3] an ALJ weighs each medical opinion based on the following factors: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The ALJ assigned little weight to Dr. Perez's opinion because he found that it was both internally inconsistent and inconsistent with later evaluations conducted by treating physicians. (AR 507, 510). Dr. Perez completed a Medical Source Statement in which she opined, *inter alia*, that Plaintiff could occasionally lift and carry up to 20 pounds; could occasionally climb ramps and stairs, balance, and stoop; could sit, stand, and walk for up to fifteen minutes both at a time and total for an eight-hour workday; and would sometimes need to use a cane. (AR 479-80, 482). Dr. Perez further opined that Plaintiff was limited to frequent handling, fingering, and feeling, occasionally reaching and pushing/pulling, and never reaching overhead with his right dominant hand. (AR 481). She assigned no limitations to Plaintiff's nondominant left hand. (AR 481). Dr. Perez additionally opined that Plaintiff had pain in both shoulders, tenderness in the left wrist, limited dorsiflexion and plantar flexion in the left ankle, and that he either had difficulty

---

[3] Although SSR 96-2p was rescinded effective March 27, 2017, the new regulations only apply to claims filed on or after the January 18, 2017 effective date of the new regulations. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The claims in this case were filed in 2012.

performing or was unable to perform certain activities such as tandem walking, standing on his heels or toes, and squatting. (AR 487).

    The ALJ noted several purported internal inconsistencies in Dr. Perez's opinion. First, the ALJ found the statement that Plaintiff sometimes needed to use a cane contradicted the finding that Plaintiff did not require any assistive device. (AR 507 (citing AR 480, 487)). Second, the ALJ found the statement that Plaintiff could sit for only fifteen minutes of an eight-hour workday to be inconsistent with the statement that Plaintiff could operate a motor vehicle "for up to one third of the eight-hour workday." (AR 507 (citing AR 480, 483)). The ALJ reasoned that, because driving a car requires the driver to be seated, Plaintiff would be able to sit for at least one-third of a workday. (AR 507). Third, the ALJ found the statement that Plaintiff could stand for only fifteen minutes to be inconsistent with the statement that Plaintiff could lift and carry 20 pounds as well as climb ramps and stairs for one-third of an eight-hour workday, as these acts require an individual to stand and walk. (AR 507 (citing AR 479-80, 482)). As such, the ALJ found that Plaintiff would be able to stand and/or walk up to one-third of the workday. (AR 507). Finally, the ALJ found that subsequent physical examinations did not corroborate Dr. Perez's findings, specifically noting that one treating physician found that Plaintiff had 5/5 strength in all four extremities, including but not limited to plantar and dorsiflexion at the ankles, flexion/extension at the knees, biceps, triceps, and grip strength, while another treating physician noted that Plaintiff had a normal gait and station. (AR 507 (citing AR 1078, 1097)).

    The ALJ's evaluation of the consistency of Dr. Perez's opinion raises several issues. First, the identical issue of Dr. Perez's statements regarding Plaintiff's use of a cane and non-use of an assistive device was addressed by Judge Martin in his opinion reversing the final decision of the Commissioner and remanding this matter in March 2018. There, Judge Martin explained that "it

7

is not apparent to the Court how needing a cane sometimes, especially in a work environment, is inconsistent with not requiring an assistive device while undergoing a physical examination at a doctor's office." *Reed v. Berryhill*, No. 2:16-CV-406-JEM, 2018 WL 1325002, at *3 (N.D. Ind. Mar. 15, 2018) (citing *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."); SSR 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996) ("The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms.")). The ALJ's finding that Dr. Perez's opinion is internally inconsistent due to these statements is erroneous for the same reason now as in March 2018.

Second, the ALJ misinterpreted Dr. Perez's findings regarding Plaintiff's ability to sit and operate a motor vehicle. The Medical Source Statement filled out by Dr. Perez includes a worksheet allowing a physician to check off certain options. (*See* AR 479-84). For the question of how often Plaintiff could operate a motor vehicle, the only options on the form are "never," "occasionally (up to 1/3)," "frequently (1/3 to 2/3)," and "continuously (over 2/3)." (AR 483). Dr. Perez's only option in this section was to check one of these boxes. And, while the ALJ is correct that "occasionally" means up to one-third of an eight-hour workday, the definition of this term provided at the beginning of the form itself, which matches the definition provided in relevant Social Security Rulings, states that it means "very little to one-third of the time." (AR 479; *See* SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) ("'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday."); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("'Occasionally' means occurring from very little up to one-third of the time.")). As such, Dr. Perez's opinion that Plaintiff could sit

for fifteen minutes is hardly inconsistent with her opinion that Plaintiff could operate a motor vehicle for a duration that, by definition, included "very little" time. The ALJ's statement that Dr. Perez's opinion supported a finding that Plaintiff could sit for "at least" one-third of an eight-hour workday appears incorrect. (*See* AR 507).

Furthermore, the ALJ offered no support for the statement that Plaintiff could sit for "at least" one-third of an eight-hour workday beyond pointing to Dr. Perez's opinion which, again, did not support that finding. And, even if the ALJ had cited support for this assertion, he determined in the RFC that Plaintiff could sit for "up to *six hours* of an eight-hour workday," which is more than twice as much as one-third of an eight-hour workday. (AR 504 (emphasis added)). Perhaps there is other evidence in the record that the ALJ meant to cite to support the finding that Plaintiff could sit for *at least* one-third of the workday and up to *six hours* of the workday, but the ALJ pointed to nothing other than Dr. Perez's opinion, which did not stand for that proposition and to which the ALJ assigned little weight regardless.

The same error described above is repeated in the ALJ's reasoning that the statement that Plaintiff could stand for only fifteen minutes was inconsistent with the statement that Plaintiff could lift and carry up to 20 pounds as well as climb ramps and stairs for one-third of an eight-hour workday, as these acts require an individual to stand and walk. When asked to note how often Plaintiff could perform these activities, Dr. Perez marked the box for "occasionally." (AR 479, 482). As noted above, this simply means that Dr. Perez found that Plaintiff could perform these activities for "*very little* to one-third of the time." (AR 479 (emphasis added); *see* SSR 96-9p, 1996 WL 374185, at *3; SSR 83-10, 1983 WL 31251, at *5). Such a finding is not inconsistent with Dr. Perez's opinion that Plaintiff could stand for only fifteen minutes both at a time and total for an eight-hour workday. (*See* AR 480).

9

Finally, the ALJ's finding that Dr. Perez's opinion was contradicted by later examinations conducted by treating physicians is unsupported by the medical records cited by the ALJ to underpin this determination. As noted above, the ALJ explained that, in contrast to the physical limitations opined by Dr. Perez, a later treating physician found that Plaintiff had 5/5 strength in all four extremities, including but not limited to plantar and dorsiflexion at the ankles, flexion/extension at the knees, biceps, triceps, and grip strength. (AR 507 (citing AR 1078)). The ALJ omitted, however, that this same physician opined that Plaintiff exhibited moderate-to-severe pain with range of motion maneuvers of the thoracic spine, moderate pain with range of motion maneuvers of the lumbar spine, and that Plaintiff ambulated with difficulty and exhibited guarding and antalgic behavior. (AR 1078). Additionally, the ALJ noted that another treating physician observed that Plaintiff had a normal gate and station. (AR 507 (citing AR 1097)). Again, however, the ALJ omitted critical information: the examining physician in the relevant record was conducting a mental status exam focused on Plaintiff's psychological health, rather than his physical wellbeing. (*See* AR 1091-102). The ALJ cited three other records for his conclusion that subsequent physical examinations did not corroborate Dr. Perez's findings, but these, too, do not support the ALJ's determination. One record notes that Plaintiff ambulated to the examination room without assistance, an issue addressed above, another is a record of Plaintiff's admission to a hospital following a motor vehicle accident and has no immediate discernible application to the ALJ's finding, and the third noted that Plaintiff's gait and stance appeared normal when he was seen for a medication refill. (AR 297, 947, 1055).

The Seventh Circuit Court of Appeals has explained that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record," and "rejecting or discounting the opinion of the agency's own examining physician" calls for "a good

explanation." *Beardsley*, 758 F.3d at 839; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *see also Garcia v. Colvin*, 741 F.3d 758, 761-62 (7th Cir. 2013) (noting that an examining agency physician is "unlikely . . . to exaggerate an applicant's disability"). While there may be compelling evidence warranting rejection of some or all of Dr. Perez's opinion, the ALJ failed to identify it. The ALJ's reasoning was further deficient in arriving at the determination that Dr. Perez's opinion was internally inconsistent. This is especially troubling in light of the fact that, as Plaintiff points out, Dr. Perez found that Plaintiff had work-preclusive limitations. (Pl.'s Br. 14 n. 6, ECF No. 15; AR 480 (limiting Plaintiff to fifteen minutes of sitting and standing in a workday); *see* SSR 96-9p, 1996 WL 374185, *3 (for sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday"); SSR 83-10, 1983 WL 31251, at *5 (sedentary work requires sitting approximately six hours out of an eight-hour day)). The Court therefore finds that remand is necessary for proper consideration of Dr. Perez's opinion.

### B. Subjective Symptom Testimony

Plaintiff argues that the ALJ made numerous errors in assessing Plaintiff's subjective allegations, rendering the ALJ's determination on this issue unsupported by substantial evidence. (Pl.'s Br. 16-20, ECF No. 15). The Commissioner, in turn, asserts that the ALJ properly considered and evaluated Plaintiff's subjective symptom testimony. (Def.'s Mem. 13-17, ECF No. 16).

The ALJ ultimately found that Plaintiff's allegations regarding his subjective symptoms were not consistent with the medical evidence. (AR 510). In reaching this conclusion, the ALJ noted that Plaintiff reported sustaining multiple injuries after falling from a bridge in 1988, yet Plaintiff worked as a carpenter after this incident. (AR 510). The ALJ further noted that earning records indicate that, while Plaintiff stopped working in 2008, he nonetheless reported working odd jobs in May 2014. (AR 510). Additionally, the ALJ recounted Plaintiff's May 2017 report that

he was walking while conducting household chores. (AR 510). Finally, the ALJ stated that Plaintiff's symptoms of anxiety and depression have been treated with medications, but noted that Plaintiff has not been wholly compliant in taking his medications. (AR 510).

The ALJ's findings in this regard are problematic for the same reasons previously explained by Judge Martin. In his March 2018 opinion remanding this matter, Judge Martin noted that "attempting to work after the onset of disability does not necessarily mean that a person is not disabled." *Reed*, 2018 WL 1325002, at *4. Indeed, the Seventh Circuit Court of Appeals has explained that "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012). The Court of Appeals has further noted that "[a] person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005).

Here, as noted by Judge Martin, Plaintiff testified at the previous hearing in 2015 that he attempted to continue doing construction work after his 1988 accident, but that as the work became more difficult over the years due to his physical limitations he had to stop. *Reed*, 2018 WL 1325002, at *4; AR 40-43. Plaintiff further testified that he did odd jobs here and there for money, but that he had been unable to do anything for several years. (AR 43-44). An ALJ can certainly consider a claimant's work history, both as it bears upon the claimant's veracity and as it pertains to the ability to perform work in the economy. Here, however, and once again, "[r]ather than considering Plaintiff's failed attempts to continue working as indicative of his veracity, the ALJ used them to find him less than believable." *Reed*, 2018 WL 1325002, at *4; *see* AR 510 (recounting Plaintiff's work history despite complaints of injury and alleged physical

impairments). And, while the ALJ can properly make a finding on veracity, the Seventh Circuit Court of Appeals has cautioned against any direct inference that, since the Plaintiff worked, he lacked a disability. *See Shauger*, 675 F.3d at 697 ("[E]ven persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits.").

Moreover, it was improper for the ALJ to perfunctorily conclude that Plaintiff's purported noncompliance with taking his medication undercut his allegations regarding the severity of his symptoms without offering any further analysis on the issue. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (holding that ALJ must not draw inferences about plaintiff's condition from plaintiff's infrequent treatment or failure to follow treatment plan unless ALJ has explored plaintiff's explanations as to lack of medical care); SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017) (explaining "[w]e will not find an individual's symptoms inconsistent with the evidence in the record [based on a failure to follow prescribed treatment that might improve symptoms] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints" and noting that some factors to consider are an inability to afford treatment and the side effects of medication). And, problematically, the records cited by the ALJ do not support his conclusion. The first cited record reflects that Plaintiff stopped taking a certain medication because his mood was worse while on it. (AR 409). The second cited record reflects that Plaintiff stopped taking two other medications because one eventually ceased helping him and the other made him feel "out of it."[4] (AR 1196). Additionally, though not mentioned by the ALJ, Plaintiff testified at the most recent hearing that his doctor is currently attempting to find a medication to help with his anxiety. (AR 546). The

---

[4] Additionally, the ALJ himself acknowledged that Plaintiff stopped taking the latter medication due to side effects, yet still found that Plaintiff was noncompliant with his medication regimen. (AR 509, 510).

ALJ's determination that Plaintiff's failure to take certain medications was inconsistent with his allegations regarding his subjective symptoms—absent any analysis from the ALJ as to why Plaintiff might not be compliant with a specific medication regimen—was error. Because the Court finds that remand is necessary on other grounds, the Court notes that, upon remand, proper consideration should be given to Plaintiff's alleged symptoms and any potential limitations therein.

### C. Residual Functional Capacity

Plaintiff notes several issues with the ALJ's RFC determination. First, Plaintiff argues that the ALJ failed to explain the basis for his determination that Plaintiff had manipulative limitations, yet was accommodated by restrictions in the RFC limiting him to occasionally reaching overhead with his nondominant left upper extremity, frequently reaching in all other directions with his nondominant left upper extremity, and frequently handling and fingering with his dominant right hand. (Pl.'s Br. 6-9, ECF No. 15). Second, Plaintiff asserts that the ALJ failed to identify what evidence supported a limitation to shifting positions every thirty minutes or alternating between sitting or standing for one to two minutes at a time while remaining on task, rather than a limitation with greater restrictions in these areas. *Id.* at 9-10. Third, Plaintiff states that the ALJ failed to identify the evidentiary basis for concluding that Plaintiff required a cane to walk but not to stand. *Id.* at 10-12. Finally, Plaintiff argues that the ALJ erred by failing to explain why a limitation regarding Plaintiff's need to frequently lie down was not included in the RFC. *Id.* at 13-14.

Because the Court finds that remand is necessary for proper consideration of the opinion of Dr. Perez and Plaintiff's allegations regarding his subjective symptoms, the Court does not reach a determination on Plaintiff's arguments regarding the RFC. However, the Court notes that, upon remand, proper consideration should be given to Plaintiff's alleged physical limitations.

### D. Request for Award of Benefits

Plaintiff requests that the Court reverse and remand for an award of benefits or, in the alternative, for a new hearing. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, "[a]n award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. Remand for further proceedings, not an award of benefits, is required in this matter, as it is not clear on the current record that an award of benefits is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 15], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 30th day of March, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT